UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CASE NO.: 3:25-cv-00128

GLOBAL WEATHER PRODUCTIONS,
LLC, VIRAL DRM LLC, AND MICHAEL
BRANDON CLEMENT,

        Plaintiffs,

v.

THE DAILY WIRE, LLC,

        Defendant.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiffs GLOBAL WEATHER PRODUCTIONS, LLC ("GWP"), VIRAL DRM LLC ("VDRM"), and MICHAEL BRANDON CLEMENT ("Clement") (collectively "Plaintiffs") by and through their undersigned counsel, files this Opposition to Defendant, THE DAILY WIRE, LLC's ("DW") Motion to Dismiss and to Strike Plaintiffs' First Amended Complaint [DE 23], and state as follows:

## I.    INTRODUCTION

Unlike Plaintiffs' previous cases, Plaintiffs have met the burden of showing they have standing in this case through the Amended Complaint. [DE 19]. GWP and VDRM are Limited Liability Company in Wyoming and Mississippi and Clement is an exclusive and sole proprietor/owner of these companies. *Id*. at ¶¶ 6-7. Clement operates a video streaming channel, "WXchasing," on various online platforms. *Id*. at ¶ 20. Clement created the video at issue in this case ("Work"), which was available on WXchasing channel, and the video was assigned Agency

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS
Case 3:25-cv-00128   Document 25   Filed 04/18/25   Page 1 of 20 PageID #: 213

Rights to VDRM and Ownership Rights to GWP after copyright registration of the video. *Id*. at ¶¶ 15, 17. Therefore, all listed Plaintiffs in this case have standing.

Federal Rule of Civil Procedure 21 provides that "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. In this instance, since Plaintiffs established standing through Amended Complaint, joining two additional plaintiffs does not indicate any prejudice. Therefore, Plaintiffs' Amended Complaint does not constitute a violation of Rule 21.

As to copyrighted work used in commercial media, this Court has already ruled that a finding of fair use as a matter of law is inappropriate at this stage. *See Breeden Media LLC v. The Daily Wire, LLC*, No. 3:24-cv-00723, 2024 U.S. Dist. LEXIS 233323 (M.D. Tenn. Dec. 27, 2024). Nevertheless, Defendant, the same defendant in *Breeden*, through its same counsel, raised fair use defense against Plaintiffs' Work for its commercial use. The four-factor analysis under fair use defense in this case is even stronger than *Breeden*.

As to violation of 17 U.S.C. § 1202(a), Defendant added its own copyright management information (CMI) through its watermark/trademark on Plaintiffs' Work. Despite Defendant's argument that its work is a derivative and thus exempt from § 1202(a) relying on prior cases, these prior cases are factually different and do not apply to the present case. Other courts have interpreted § 1202(a) strictly, indicating that providing false CMI, regardless of the nature of the work, constitutes a violation.

As to bond, Defendant requested that Plaintiffs should post a cost bond if this case proceeds. Again, the same Defendant, through its same counsel, raised the same argument in *Breeden*, and this Court rejected it. *See Id*. At best, Defendant tried to distinguish this case from

*Breeden* by raising Plaintiffs' firm's previous lawsuit *Keatley v. Escape Game, LLC*, No. 3:21-CV-00230, 2022 WL 1432552 (M.D. Tenn. May 5, 2022) because the plaintiff's settlement conduct was objectively unreasonable. Here, Plaintiffs diligently conducted settlement conduct based on careful calculation of case law and statutes.

Therefore, Defendant's Motion should be denied entirely, and Defendant is not entitled to reimbursement of any attorney's fee under 17 U.S.C. § § 505 and 1203 at this stage.

## II. FACTUAL BACKGROUND

Clement is an award-winning videographer who captures extreme weather footage resulting from natural disasters. [DE 19 ¶ 2]. With over 30 years of experience, Clement has made a living off of his work by licensing the content he captures to major media outlets, and by receiving compensation from video streaming companies by streaming footage of his work on their platforms. *Id.* at ¶ 3. Clement is the sole proprietor/owner of GWP that manages and stores his copyrighted works and oversees the distribution of his videos to individuals and organizations. *Id.* at ¶¶ 3 and 6. Clement is also the sole proprietor/owner of of VDRM that syndicates extreme weather content from videographers around the world. *Id.* at ¶¶ 5, 7. VDRM is the exclusive authorized agent of the copyrighted Work involved in this case. *Id*. at ¶ 5. Clement also operates the popular and valuable video streaming channel, "WXchasing," on various online platforms on YouTube, Facebook, Twitter, Instagram, and TikTok. *Id*. at ¶ 20.

In 2022, Clement created footage of an extreme weather event that occurred in Kentucky titled "7.28.2022_Hindman KY underwater," which was a 3 minute and 12-seconds video (hereinafter referred to as the "Work"). *Id.* at ¶ 15. The Work was available in his YouTube channel at the following URL: https://www.youtube.com/watch?v=PFSizOheU_k. *Id*. The Work

was registered with the Register of Copyrights on August 7, 2022. *Id.* at ¶ 16. After registering the Work, Clement assigned Agency rights in the Work to VDRM and ownership rights of the Work to GWP. *Id.* at ¶17. Through his companies, Clement remains the exclusive and beneficial owner of the Work. *Id.*

Defendant is a Tennesse Limited Liability Company and owns the DW+ trademark for the usage of streaming of audio and visual material on the internet. *Id*. at ¶¶ 24 and 25 and Exhibit 2. Defendant owns and operates one or more video streaming channels at least at the following URLs: https://www.facebook.com/TheBenShapiroShow, https://www.facebook.com/officialbenshapiro, https://www.facebook.com/MattWalshBlog, https://www.facebook.com/aklavan, and https://www.facebook.com/DailyWire (collectively "Websites"). *Id*. at ¶26.

On or about February 23, 2024, prior to filing of this action, Plaintiffs discovered the unauthorized use of the Work on Defendant's Websites. *Id.* at ¶¶ 40 and 41 and Exhibit 3. Defendant did not have permission to use the Work. *Id.* at ¶ 42. Defendant edited the Work, added its own watermark on the upper left corner, and then uploaded the infringing version of Plaintiffs' Work to Websites. *Id*. at ¶¶ 28 and 46 and Exhibit 3; [DE 24 Ex. A.]. Defendant used the most valuable portions of Plaintiffs' Work on Defendant's Websites to promote the sales of goods and services as part of its media platform and streaming service. *See* [DE 19 at ¶ 43 and Exhibit 3].

On February 4, 2025, GWP filed an Original Complaint against the Defendant for violations under 17 U.S.C. § 501 and 17 U.S.C. §1202(a). [DE 1]. On March 4, 2025, Defendant filed its Motion to Dismiss to the Original Complaint. [DE 14]. On March 17, 2025, Plaintiffs

filed its First Amended Complaint against the Defendant. [DE 19]. On April 4, 2025, Defendant filed its Motion to Dismiss and to Strike Plaintiffs' First Amended Complaint. [DE 23].

### III. LEGAL ARGUMENTS

#### A. Plaintiffs' Amended Complaint addressed All Elements of Copyright Infringement to State a Plausible Claim for Relief under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Nuchols v. Berrong*, 141 F. App'x 451, 453 (6th Cir. 2005) (citing *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999)) To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial

5
**SRIPLAW**
Case 3:25-cv-00128    CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS
Case 3:25-cv-00128    Document 25    Filed 04/18/25    Page 5 of 20 PageID #: 217

plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678-79. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679; *Twombly*, 550 U.S. at 556.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Company*, 499 U.S. 340, 361 (1991).

Here, Plaintiffs sufficiently pled a claim for copyright infringement in the Amended Complaint. [DE 19]. Plaintiffs allege Clement created the Work in 2022 and assigned Agency Rights to VDRM and Ownership Rights GWP where Clement is the exclusive owner of the Work. [DE 19 ¶¶ 15, 17]. Plaintiffs also allege the Work was registered with the Register of Copyrights on August 7, 2022, and was assigned the registration numbers PA 2-369-592. (*Id*. ¶ 16; Exhibit 1). On its face, copyright infringement is established.

### B. Plaintiffs have sufficiently shown they have Statutory Standing.

Section 501(b) of the Copyright Act establishes that the "legal or beneficial" owner of an exclusive right is entitled to "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). To have standing to bring suit, a party must have some ownership rights over at least part of the exclusive right for which he wishes to sue. *Warner/Chappell Music, Inc. v. Blue Moon Ventures*, No. 3:10-1160, 2011 U.S. Dist. LEXIS 14886, 2011 WL 662691, at *3 (M.D. Tenn. Feb. 14, 2011). This includes owners, joint owners, beneficial owners, and exclusive licensees. *Breeden Media LLC*, 2024 U.S. Dist.

6
**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS
Case 3:25-cv-00128    Document 25    Filed 04/18/25    Page 6 of 20 PageID #: 218

LEXIS 233323, at *10; *see Warner/Chappell Music, Inc.*, 2011 U.S. Dist. LEXIS 14886, [WL] at *4; *Parker v. Hinton*, No. 22-5348, 2023 U.S. App. LEXIS 1931, 2023 WL 370910, at *3 (6th Cir. Jan. 24, 2023); *Bluewater Music Servs. v. Spotify USA*, No. 3:17-cv-01051-JPM, 2018 U.S. Dist. LEXIS 173064, 2018 WL 4714812, at *2 (M.D. Tenn. Sept. 29, 2018). This, however, does not include non-exclusive licensees. *Breeden Media LLC*, 2024 U.S. Dist. LEXIS 233323, at *10. The rationale underlying this rule is that the grant of a non-exclusive license is not a "transfer of copyright ownership." *Id.* at *11; *see* 17 U.S.C. § 101; *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). To succeed on its statutory standing argument, the defendant must show that the plaintiff has entirely relinquished the exclusive rights at issue, which cannot be established by the grant of a non-exclusive license. *Breeden Media LLC*, 2024 U.S. Dist. LEXIS 233323, at *11.

As discussed below, Plaintiffs have standing to bring this action.

### 1. Clement's Ownership

Clement is listed as the owner of the copyright registration for the Work in question under 17 U.S.C. § 411(a). [DE 19-1 Exhibit 1]. The copyright registration indicated that Clement is the owner and has exclusive rights under 17 U.S.C. § 106. As the sole owner of the copyrighted Work, Clement clearly holds standing to sue under copyright law as an owner of exclusive rights under 17 U.S.C. § 501(b).

### 2. GWP's Role in Managing Copyrighted Works

A plaintiff has the right to grant nonexclusive mechanical licenses to as many different people as they want. *Bluewater Music Servs. Corp. v. Spotify United States Inc.*, No. 3:17-cv-01051-JPM, 2018 U.S. Dist. LEXIS 173064, at *13 (W.D. Tenn. Sep. 28, 2018). While there is a

restriction on agreeing to license below a certain monetary threshold, a plaintiff still has those rights. *Id*.

GWP manages and stores Clement's collection of copyrighted works, including the Work at issue [DE 0019 ¶3], and is solely owned by Clement. *Id*. at ¶ 6. This connectivity allows GWP to control and administer Clement's works for licensing and distribution across different media platforms. This connectivity between GWP and Clement supports that GWP is qualified to have standing under 17 U.S.C. § 501 (b).

### 3. VDRM's Role as Exclusive Agent

VDRM is identified as the "exclusive authorized agent" of Clement for the Work at issue *Id* at ¶5, and is solely owned by Clement. *Id*. at ¶7. This exclusivity of VDRM's authorization distinguishes it from a non-exclusive licensee. This exclusivity granted to VDRM allows it to manage or exploit any of Clement's exclusive rights under 17 U.S.C. § 106. VDRM's rights are closely related to those of GWP and Clement, and VDRM does not possess independent ownership. VDRM's standing is entwined with that of GWP and Clement.

Hence, Plaintiffs satisfy the statutory requirements for standing to bring a copyright infringement suit 17 U.S.C. § 501(b).

### C. Plaintiffs have not violated Rule 21.

In determining whether to dismiss a party under Rule 21, courts have "consider[ed] whether dismissal will prejudice any of the parties in the litigation." *Doe v. Bethel Local Sch. Dist. Bd. of Educ.*, No. 23-3740, 2024 U.S. App. LEXIS 6065, at *3 (6th Cir. Mar. 13, 2024) (citing *Maher v. Federated Serv. Ins. Co.*, 666 F. App'x 396, 401 (6th Cir. 2016)).

As the Plaintiffs have established standing through the Amended Complaint, clearly demonstrating that GWP and VDRM are properly joined as parties—both being Limited Liability Companies with Clement as their exclusive owner, and all rights to the video at issue properly assigned after registration. There is no indication of prejudice here. Therefore, the composition of parties through Plaintiffs' Amended Complaint is proper, and no grounds exist for dismissal or alteration under Rule 21.

### D. Defendant's use of Plaintiffs' Work was not Fair Use.

The purpose of the fair use doctrine is to ensure that courts "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Zomba Enters. v. Panorama Recs.*, 491 F.3d 574, 581 (6th Cir. 2007) (quoting *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1385 (6th Cir. 1996)). Section 107 of the Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Section 107 sets forth four factors to determine fair use:

> (1) The purpose of and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) The nature of the copyrighted work;
>
> (3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) The effect of the use upon the potential market for or value of the copyrighted work. *Id*.

Whether a defendant's use was 'fair' ultimately involves a 'case-by-case' determination guided, non-exclusively, by the four factors discussed above. *House of Bryant Publs, LLC v. A & E Television Networks*, No. 3:09-0502, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055, at *5

(M.D. Tenn. Oct. 30, 2009) (quoting *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 549 (1985)). Finally, "[t]he scope of the fair use doctrine is wider when the use relates to issues of public concern." *Nat'l Rifle Ass'n v. Handgun Control Fed'n*, 15 F.3d 559, 562 (6th Cir. 1994).

Defendant contends that its use of Plaintiffs' Work constitutes fair use that can support Rule 12(b)(6), relying on *Morris v. Wise*, No. 1:19 CV 2467, 2020 WL 1000010 (N.D. Ohio Mar. 2, 2020). Yet, as to copyrighted work used in commercial media, which is the case here, this Court already ruled that a finding of fair use as a matter of law is inappropriate at this stage. *See Breeden Media LLC*, 2024 U.S. Dist. LEXIS 233323 at 26. Plaintiffs disagree with Defendant's fair use defense. After analyzing all four factors, each factor leans against a finding of fair use.

### 1. The Purpose and Character of the Use

The first factor concerns the manner in which the copied work was used. In evaluating the first factor, the court examines the purpose and character of the use, including whether such use is of a commercial in nature or is for nonprofit educational purposes. *Zomba Enters*. 491 F.3d at 582 (quoting *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994)). The first and most obvious is commerciality—"whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321-22 (5th Cir. 2022) (citing *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 562 (1985)). "Every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Bell* 27 F.4th 321-22 (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). "The crux of the profit/nonprofit distinction is not whether the sole

motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.

The other consideration for this factor is whether the defendant's use was "transformative." *See Campbell*, 510 U.S. at 579. To determine whether a use is transformative, the court should explore whether the new work 'merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' *House of Bryant Publs, LLC v. A&E TV Networks*, No. 3:09-0502, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055 at *5 (M.D. Tenn. Oct. 30, 2009) (citing *Campbell*, 510 U.S. at 579). "[G]iven that much of the creative work performed in this country is done for commercial purposes, this second point tends to take on less significance, especially when the new work is highly transformative." 2009 U.S. Dist. LEXIS 101878, [WL] at *5 (citing *Zomba Enters*., 491 F.3d at 582). Using a 32-second, unedited portion of the plaintiff's video to illustrate and report on events weighed against the first factor of fair use defense. *See* 2024 U.S. Dist. LEXIS 233323, at *20. When the purpose of the video was precisely to report on the events it depicts, the use was not transformative. *Id*.

Here, the Amended Complaint alleges that Defendant is a media company. Defendant owns and operates video streaming channels under its registered trademark. [DE 19 ¶¶ 24-26]. Defendant did not deny it is a media company. [DE 24]. Defendant is commercial in nature.

Defendant argued that its use of the Work in this case is transformative, relying on *Morris v. Wise*, No. 1:19 CV 2467, 2020 WL 1000010 (N.D. Ohio Mar. 2, 2020). In *Morris*, the copyrighted work is plaintiff's photograph of a public figure, bearing the logo of a television company that employed him. The defendant used this photograph only as part of defendant's

YouTube *thumbnail image*. The defendant's YouTube video addressed potential public concerns about the public figure depicted in the work.

Here, Defendant incongruously compared the use of the thumbnail image in *Morris* with the 43-second use of the Plaintiffs' Work. Unlike *Morris*, where the plaintiff's photograph was likely used for a mere scintilla of a second as an incidental component of the defendant's YouTube thumbnail, Defendant here appropriated 43-seconds from the Work, where an unedited portion of 32 seconds played as it is, while integrating it into their News Reel. This notable discrepancy is not transformative. Further, similar to *Breeden*, where this Court held that use of plaintiff's work for news reporting on national security is not transformative, Defendant used the Work to depict the event of Kentucky's state of emergency due to flooding. Therefore, the first factor weighs against fair use.

## 2. The Nature of the Copyrighted Work

Courts consider two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated. *Balsley v. LFP*, 691 F.3d 747, 759 (6th Cir. 2012) (quoting *Nunez v. Caribbean Int'l News*, 235 F.3d 18, 23 (1st Cir. 2000)). The copyright registration threshold is minimal, requiring only that the author independently created the work with some degree of creativity. *See Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 989 (6th Cir. 2024). Although photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer plaintiffs. *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000).

Here, the fact that a professional videographic content creator captured the Work supports that Defendant's use weighs against fair use. Clement is a professional videographer and a syndicator of award-winning videographic content, and Plaintiffs' video streaming channels are viewed by a substantial number of people nationwide and globally [DE 19 ¶¶ 2, 21-22]. Capturing a video such as the Work in this matter is the result of a balanced combination of skill and creativity. While the flooding in Kentucky is factual, capturing these scenes requires creativity, as Clement must take risks by visiting the site while mastering the timing and skilled handling of his drone. More importantly, the Work was registered by Copyright Office indicating this Work was independently created with some degree of creativity. Therefore, the second factor weighs heavily against fair use.

### 3. The Amount and Substantiality used in relation to the Copyrighted Work as a Whole

The third factor focuses on the amount of the allegedly infringed work that was taken by the alleged infringer. *See House of Bryant Publ'ns*, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055, at *7 (citing *Zomba Enters.*, 491 F.3d at 583). "[T]he larger the volume … of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Zomba Enters.*, 491 F.3d at 583 (citing *Princeton Univ. Press*, 99 F.3d at 1389). "[T]he court should consider both the 'quantity' and . . . the 'value' of the materials taken[;] that is, the court should consider whether the amount taken was 'reasonable in relation to the purpose of the copying.'" *House of Bryant Publ'ns*, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055, at *7 (quoting *Campbell*, 510 U.S. at 586).

Defendant does not contest the fact that it used the 43-seconds of the Work for its News Reel, which has a total duration of 3 minutes 6 seconds. However, Defendant made disingenuous

assertion by claiming that the Work constituted merely 15% of the News Reel. The reality is that the Work was used in approximately 23% of the News Reel.

Further, Defendant's reliance several cases is misguided. In *Brody v. Fox Broad. Co., LLC*, No. 22CV6249 (DLC), 2023 WL 2758730, at *4 (S.D.N.Y. Apr. 3, 2023), the court found that defendant's use of a *single screenshot* that was sourced and edited by the FBI for news reporting is not substantial use. In *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 463 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021), the court did not find that the song was used substantially in quantitative manner because the use of eight second of the plaintiff's 190 seconds song (i.e., 4% of plaintiff's song) featured in defendant's film was not substantially quantitative.

The present case is markedly different. Unlike *Brody*, Plaintiffs' Work was not used by Defendant as a single screenshot. Similarly, unlike *Brown*, Defendant's News Reel used 43-seconds of Plaintiff's 3 minutes and 12 seconds Work (i.e., 22% of Work). Therefore, the third factor weighs heavily against fair use.

### 4. Market Harm.

When the challenged use is commercial in nature, the burden of proof as to market effect rests with the alleged infringer. *Princeton Univ. Press*, 99 F.3d at 1386. Put differently, "where, as here, 'the copying at issue is commercial in nature, the alleged infringer bears the burden of proving . . . that its copying does not adversely affect the market value' of the plaintiff's copyrights." *House of Bryant Publ'ns*, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055, at *8 (quoting *Zomba Enters.*, 491 F3d at 583). This factor further "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would

result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. "[W]here 'the copyright holder clearly does have an interest in exploiting a licensing market and especially where the copyright holder has actually succeeded in doing so,' the fact that the defendant's use deprived the plaintiff of licensing revenues it would have otherwise received is relevant to the fair use analysis." *House of Bryant Publ'ns*, 2009 U.S. Dist. LEXIS 101878, 2009 WL 3673055, at *8 (quoting *Princeton Univ. Press*, 99 F.3d at 1387).

Here, there is an established market for the Work as it has been licensed to many media companies. Not only were Plaintiffs harmed because they did not receive a licensing fee for the use of Plaintiffs' Work, Defendant's use of the Work for free naturally diminishes the value of the Work. Further, Plaintiffs will certainly be substantially harmed if the public could use the Work in the same manner as Defendant did without paying for a license fee. The Work derives value for Plaintiffs based on their ability to exclusively control the use of the Work pursuant to their exclusive rights under 17 U.S.C. § 106. Defendant's usurpation, and by extension in the market harm factor analysis, the public's usurpation of these rights weighs heavily against fair use.

### E. Defendant used Plaintiff's Work by placing a watermark, violating 17 U.S.C. § 1202(a)

Congress enacted Digital Millennium Copyright Act (DMCA) in 1998 to support the efforts of copyright owners to protect their works from online piracy. The statute relevantly states:

> 17 U.S. Code § 1202 - Integrity of copyright management information
>
> (a) False Copyright Management Information.—No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is false.

Here, Defendant added its copyright management information (CMI) through its own trademark DW onto Plaintiff's Work in the upper left corner throughout News Reel, where its side-by-side comparison is shown below.




The underlying content of Defendant's use of Plaintiffs' Work remains identical to Plaintiffs' Work. Defendant did so at least five different URLs. *See* [DE 19 ¶ 26].

Defendant argues that because Defendant's work is their own work derived from Plaintiff's work, 1202(a) does not apply. *See* [DE 24]. In support, Defendant relied on two cases. *42 N., LLC v. Brad Douglas, LLC*, No. 1:20-CV-188, 2024 WL 4661396, at *6 (W.D. Mich. Nov. 4, 2024) and *Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 CIV. 4875 (NRB), 2021 WL 3192543. Defendant's reliance on these two cases is misguided.

In *42 N., LLC v. Brad Douglas*, the court found that the defendant's physical work *created by hand drawing* is not identical to the plaintiff's work. In *Michael Grecco Prods., Inc. v. Time USA, LLC*, defendant properly used its right to reproduce its cover derived from plaintiff's work pursuant to the agreement between them. Courts in these two cases found that its derivative work is essentially fair use and § 1202(a) does not apply.

Such is not the case here. Unlike *42 N., LLC v. Brad Douglas* where court found 1202(a) does not apply to defendant's physical works, the present Defendant merely copied approximately 43-seconds of Plaintiffs' work on its News Reel on five different websites and added Defendant's trademark as CMI. [DE 19 at ¶ 29]; [DE 24 Ex. A]. Contrary to *Michael Grecco Prods., Inc. v. Time USA, LLC* where agreement between defendant and plaintiff provided defendant with its right to create its cover using plaintiff's work, there is no such agreement between Plaintiff and Defendant in this case.

Other courts even strictly interpreted 1202(a) regarding derivative work. *Huffman v. Activision Publ'g*, No. 2:19-cv-00050-RWS-RSP, 2020 U.S. Dist. LEXIS 250979, at *36 (E.D. Tex. Dec. 13, 2020) ("This Court finds that section 1202(a) is unambiguous. If someone with the specified intent provides false CMI, they have violated section 1202(a). Nothing in the statute exempts derivative works or a defendant's own work."); *see New Parent World, LLC v. True to Life Prods.*, No. CV-23-08089-PCT-DGC, 2024 U.S. Dist. LEXIS 172098, at *5 (D. Ariz. Sep. 24, 2024); *Adr Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 429 (S.D. Tex. 2023).

As a media company, where creativity serves as the foundation of expression, Defendant knew that Plaintiffs' work did not belong to Defendant. Defendant knew how to seek permission or properly license the use of someone else's creation. Yet, Defendant chose a different path,

appropriating 43-seconds of Plaintiffs' work without any authorization of or attribution to Plaintiff and intentionally embedding their own trademark throughout its News Reel. This act sufficiently alleged a violation of § 1202(a).

## F. Defendant's use is not de minimis and posing a bond is not necessary.

For the reasons above, Defendant's use cannot be de minimis. Echoing arguments already dismissed by this Court in *Breeden*, Defendant contends that its defenses are strong that the potential damages in this case are negligible, and that the plaintiff's former cases had engaged in strategic infringement claims of dubious merit. To complicate the matter, Defendant also claims that a bond is necessary because Plaintiffs' current counsel had not done complete due diligence.

Under 17 U.S.C. § 504(c), a copyright owner is entitled to up to $30,000 per statutory claim if found non-willful and up to $150,000 if found willful. *See* 17 U.S.C. § 504(c). As to CMI violations or 1202(a) violations, a copyright owner is entitled to up to $25,000 for each violation. *See* 17 U.S.C. § 1203 (3)(b).

Defendant's reliance on *Keatley* is notably misplaced. *Keatley v. Escape Game*, LLC, No. 3:21-CV-00230, 2022 WL 1432552 (M.D. Tenn. May 5, 2022). In *Keatley*, an unaffiliated attorney with Plaintiffs' law firm initially sought maximum damages of $525,000 based on copyright infringement and violations of CMI.

Contrarily, the present Plaintiffs have never laid claim to such figures. Instead, Plaintiffs' demand resulted from carefully assessing Defendant's violations under 17 U.S.C. § 501 and 17 U.S.C. § 1202(a). At no juncture has Plaintiffs' action been objectively unreasonable.

Defendant referenced Plaintiff's previous cases to bolster its argument (i.e., *Viral DRM LLC v. Lepetyuk*, 2025 WL 822981 (N.D. Cal. Mar. 14, 2025); *Viral DRM LLC v. Lietucheva*, 2025 WL 822689 (N.D. Cal. Mar. 14, 2025); *Viral DRM, LLC v. Shubstorsky*, 2025 WL 822691 (N.D. Cal. Mar. 14, 2025); *Viral DRM LLC v. Fuentes*, 2025 WL 822690 (N.D. Cal. Mar. 14, 2025); *Viral DRM LLC v. Navez*, 2025 WL 834498 (N.D. Cal. Mar. 17, 2025); *Viral DRM LLC v. Asghar*, 2025 WL 822685 (N.D. Cal. Mar. 13, 2025); *Viral DRM LLC v. Fadilah*, 2025 WL 822688 (N.D. Cal. Mar. 14, 2025); *Viral DRM LLC v. Margarita*, 2025 WL 822980 (N.D. Cal. Mar. 14, 2025)). These cases stand apart from the present case.

In those cases, the plaintiff, Viral DRM, believed that the agreements it had in place were sufficient for standing. However, it was not and was a justifiable mistake under FRCP 17. On the other hand, the Court in *Viral DRM v. Seven West Media* granted Viral DRM leave to amend to add the individual videographers. *Viral DRM LLC v. Seven W. Media Ltd.*, No. 24-cv-06354-WHO, 2025 U.S. Dist. LEXIS 36861, at *1 (N.D. Cal. Feb. 28, 2025)

All the cases referenced by Defendant are ultimately extraneous; this case concerns a single videographer, Clement, who holds ownership of both GWP and Viral DRM. Like *Breeden*, Defendant here does not deny having used the Work. No evidence suggests a failure on the part of Plaintiffs to engage in due diligence or ethical litigation practices. Instead, the same Defendant, represented by the same counsel, continues to revive arguments that were already dismissed in *Breeden*, wasting this Court's time and resources on a fruitless endeavor.

WHEREFORE, Plaintiffs GLOBAL WEATHER PRODUCTIONS, LLC, VIRAL DRM LLC, AND MICHAEL BRANDON CLEMENT request that Defendant THE DAILY WIRE,

LLC's Motion to Dismiss [DE 23], be denied entirely and demand for such other and further relief deemed equitable or necessary.

Dated: April 18, 2025                    Respectfully submitted,

*/s/ Sangheon Han*
SANGHEON HAN (*Pro Hac Vice*)
sangheon.han@sriplaw.com

**SRIPLAW, P. A.**
4900 Travis Street
Suite 212
Houston, TX 77002
281.417.0850 – Telephone
561.404.4353 – Facsimile

and

*/s/ Anthony J. Underwood*
ANTHONY J. UNDERWOOD
Bar Number: 041350
anthony.underwood@sriplaw.com

**SRIPLAW, P. A.**
3355 Lenox Road NE
Suite 750
Atlanta, TX 30326
470.200.0155 – Telephone
561.404.4353 – Facsimile

*Counsels for Plaintiffs Global Weather Productions, LLC and Michael Brandon Clement*